IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | |
| v. | : | Criminal Action No. 07-116-JFF |
| TYREKE SPENCER, | : | |
| Defendant. | : | |

**DEFENDANT'S MOTION TO SUPPRESS
PHYSICAL EVIDENCE AND STATEMENTS**

Defendant, Tyreke Spencer, by and through his undersigned counsel, Luis A. Ortiz, Assistant Federal Public Defender, hereby moves this Court, pursuant to Federal Rule of Criminal Procedure 12(b)(3) and the Fourth, Fifth and Fourteenth Amendments of the United States Constitution, for an Order suppressing the Government's use of any and all statements made by Mr. Spencer to law enforcement officers on or about August 14, 2007, and any physical evidence seized as a result of those statements.

In support of this motion, Mr. Spencer avers as follows:[1]

1. On August 14, 2007, Wilmington police officers received a phone call from a local hospital, reporting that they were treating Mr. Spencer, who was the victim of a gunshot wound to the foot. At approximately 6:00 a.m., Detective Ron Mullin arrived at the hospital and interviewed Mr. Spencer.

---

[1] The facts contained in this motion were taken from the arresting officer's Initial Crime Report and Narrative Inquiry. Although Mr. Spencer cites these facts in his motion, he does not concede that the events transpired as stated by the arresting officers. Mr. Spencer submits that an evidentiary hearing is needed to further develop the facts, which are determinative of this motion.

2. Mr. Spencer allegedly told Detective Mullin that two unknown males had attempted to rob him at gunpoint in the alley next to his home. Mr. Spencer stated that a struggle ensued, and he grabbed the assailant's gun, which discharged into his left foot. Mr. Spencer also allegedly stated that the assailants fled, and a friend drove him to the hospital. Detective Mullin relayed this information to Detective Pigford.

3. At 7:00 a.m., Detective Pigford investigated the crime scene near Mr. Spencer's residence and found a 9mm shell casing. He also saw a blood trail leading from the alleyway adjacent to Mr. Spencer's residence to a tan Mercury Cougar parked across the street, and then to a vacant parking space, where the blood trail stopped.

4. At 8:00 a.m., Detective Pigford arrived at the hospital and interviewed Mr. Spencer for a second time. Mr. Spencer again allegedly stated that he had been robbed by two unknown males, and that one of their firearms had discharged into his foot during the ensuing struggle. Mr. Spencer, however, also allegedly stated that he was able to gain possession of the gun after it discharged, and that the two assailants fled the scene. Mr. Spencer allegedly stated that he hid the firearm in the glove compartment of the Mercury Cougar parked across from his house and drove himself to the hospital.

5. At 10:45 a.m., Detective Pigford executed a search warrant of the Mercury Cougar and found a loaded 9mm pistol.

6. At 12:30 p.m., Detective Pigford and Special Agent Jason M. Kusheba, of the Bureau of Alcohol, Tobacco and Firearms, interviewed Mr. Spencer at the hospital. During this third interview, Detective Pigford verbally advised Mr. Spencer of his <u>Miranda</u> warnings. Mr. Spencer allegedly stated that he understood his rights, agreed to answer questions and initially repeated the same set of facts that he had previously relayed to Detective Pigford. Mr. Spencer, however, allegedly

acknowledged that he made up the story and agreed to tell the truth.  Mr. Spencer allegedly stated that he had been high on marijuana laced with PCP when he accidentally shot himself in the foot, and had been in possession of the firearm for several days.

7. Upon information and belief, Mr. Spencer was sedated with morphine and other drugs immediately prior to the two interviews with Wilmington detectives, and heavily sedated at the time of subsequent interviews.

8. On September 6, 2007, Mr. Spencer was indicted for knowingly possessing a firearm that has been transported in interstate commerce to Delaware, in violation of 18 U.S.C. § 922(g)(1) and 924 (a) (2).

9. The Fifth Amendment of the United States Constitution protects a citizen from being "compelled in any criminal case to be a witness against himself." US CONST. Amend. V.  See also Miranda v. Washington, 384 U.S. 436, 444 (1966) (stating that a suspect subjected to custodial interrogation must be advised of his rights prior to making a statement).  Only confessions that are voluntary may be admitted into evidence, and the government has the burden of proving beyond a preponderance of the evidence that a confession was voluntarily given.  United States v. Swint, 15 F.3d 286 (3d Cir. 1994) (stating that a confession is voluntary when it is the "'product of an essentially free and unconstrained choice by its maker,' that it was 'the product of a rational intellect and a free will,' and that the [defendant's] will was not overborne.") (citation omitted).  See also Jackson v. Denno, 378 U.S. 368, 380 (1964) ("A defendant objecting to the admission of a confession is entitled to a fair hearing in which both the underlying factual issues and the voluntariness of his confession are actually, and reliably determined.").  Once the defendant challenges the admissibility of an alleged statement, the government bears the burden of establishing compliance with

<u>Miranda</u> and its progeny, and must demonstrate that the suspect knowingly, intelligently and voluntarily waived his or her rights. <u>Id.</u>

10. To determine whether a confession is voluntary, the court must examine the totality of the circumstances, including any coercion, the length and location of the interrogation, its continuity, the defendant's maturity and level of education, and his or her physical condition and mental health. <u>Swint</u>, 15 F.3d at 289. The crucial factor, however, is whether there was police coercion. <u>Id.</u>; see also, <u>Colorado v. Connelly</u>, 479 U.S. 157 (1986).

11. Mr. Spencer submits that he did not voluntarily, knowingly or intelligently waive his <u>Miranda</u> rights because he was suffering from a gunshot wound and heavily sedated with morphine and other drugs during each interview with the Wilmington detectives and ATF agent. Accordingly, any alleged statements should be suppressed. <u>See also Jackson</u>, 378 U.S. at 376 ("It is now axiomatic that a defendant in a criminal case is deprived of due process of law if his conviction is founded, in whole or in part, upon an involuntary confession, without regard for the truth or falsity of the confession.").

12. Generally, evidence obtained as a result of a constitutional violation is suppressed because it is "fruit of the poisonous tree." <u>Oregon v. Elstad</u>, 470 U.S. 298 (1985). Although the Supreme Court has determined that the failure to give a suspect <u>Miranda</u> warnings does not require suppression of the physical fruits of a suspect's statements, such physical evidence may be suppressed if the statements were involuntary and unconstitutional under the Fifth Amendment. <u>United States v. Patane</u>, 542 U.S. 630 (2004). Mr. Spencer submits that the physical evidence, which was obtained as a result of his involuntary statements, must be suppressed.

13. Mr. Spencer reserves the right to file a Memorandum of Law in support of his Motion

4

to Suppress Physical Evidence and Statements after the completion of a hearing in this matter.

**WHEREFORE**, Mr. Spencer respectfully requests that this Court conduct a hearing to further develop the facts related to this motion and enter an Order suppressing the Government's use of any and all statements made by Mr. Spencer to law enforcement officers on or about August 14, 2007, and any physical evidence seized as a result of those statements.

                                               Respectfully submitted,

                                               /s/ Luis A. Ortiz
                                               Luis A. Ortiz, Esquire
                                               Assistant Federal Public Defender

                                               Attorney for Tyreke Spencer

Federal Public Defender's Office
One Customs House
704 King Street, Suite 110
Wilmington, DE 19801
(302) 573-6010

Dated: November 1, 2007

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Criminal Action No. 07-116-JJF |
| | : | |
| TYREKE SPENCER, | : | |
| | : | |
| Defendant. | : | |

## ORDER

**AND NOW**, this \_\_\_\_ day of _____, 2007, upon consideration of the Defendant's Motion to Suppress Physical Evidence and Statements, and the Government's response thereto, it is hereby ORDERED that the Motion is GRANTED.

All physical evidence seized by the Wilmington Police Department and the Bureau of Alcohol, Tobacco and Firearms on August 14, 2007, and statements made by the Defendant to law enforcement officials on August 14, 2007, are hereby **SUPPRESSED**. Such physical evidence and statements shall be inadmissible, for any purpose, by the Government.

**BY THE COURT:**

_____
Honorable Joseph J. Farnan, Jr.
United States District Court Judge