# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | Criminal Action No. 07-116-JJF |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| TYREKE SPENCER, | : | |
| | : | |
| Defendant. | : | |

### THE GOVERNMENT'S PRE-HEARING OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS PHYSICAL EVIDENCE AND STATEMENTS

COMES NOW, the United States, by and through its undersigned counsel, Colm F. Connolly, United States Attorney for the District of Delaware, and Seth M. Beausang, Assistant United States Attorney for the District of Delaware, and hereby opposes Defendant's Motion to Suppress Physical Evidence and Statements for the following reasons:[1]

### BACKGROUND

1. On August 14, 2007, Wilmington police officers received information that the Defendant had arrived at St. Francis Hospital seeking treatment for a gunshot wound to his foot. At approximately 5:50 a.m. that day, Officer Ledesma arrived at the hospital and interviewed the Defendant in the area of the Emergency Room where the Defendant was being treated.

2. The Defendant told Officer Ledesma that while smoking a cigarette near the 1900 block of Tulip St. in Wilmington, Delaware two unknown males attempted to rob him. The Defendant claimed that one of the males displayed a gun and that the Defendant tried to grab the

---

[1]The facts contained in this opposition are based on the evidence the Government expects will be introduced at any hearing on Defendant's Motion. Only those facts necessary to respond to Defendant's Motion are stated. The Government will supplement its opposition with evidence from the record after the hearing, should the Court so require.

gun. The Defendant claimed that during the struggle over the gun the gun went off striking the Defendant in the foot. The Defendant stated a friend drove him to the hospital.

   3.  The Government expects that Officer Ledesma will testify that during this interview the Defendant was not in custody and that Officer Ledesma did not do or say anything to cause a reasonable person in the Defendant's position to believe that he was not free to leave. The Government also expects that Officer Ledesma will testify that the Defendant was alert and coherent and able to respond intelligently to Officer Ledesma's questions.

   4.  At approximately 6:00 a.m. on August 14, 2007, Officer Mullin arrived at the hospital and interviewed the Defendant, who was still in the Emergency Room. The Defendant told Officer Mullin that after taking out the trash in front of his residence on Tulip St. in Wilmington, Delaware, the Defendant walked to the area of Tulip St. and Lincoln St. where two unknown males attempted to rob him. The Defendant claimed that one of the males displayed a gun and that the Defendant tried to grab the gun. The Defendant claimed that during the struggle over the gun the gun went off striking the Defendant in the foot. The Defendant stated he was driven to the hospital.

   5.  The Government expects that Officer Mullin will testify that during this interview the Defendant was not in custody and that none of the officers present did or said anything to cause a reasonable person in the Defendant's position to believe that he was not free to leave. The Government also expects that Officer Mullin will testify that the Defendant was alert and coherent and able to respond intelligently to Officer Mullin's questions.

   6.  Officer Mullin then told Officer Pigford, who was at the scene of the alleged robbery investigating, what the Defendant had told him. At approximately 8:00 a.m. on August

14, 2007, Officer Pigford went to the hospital to re-interview the Defendant, who was still in the Emergency Room. The Defendant told Officer Pigford essentially the same story that he had told Officer Mullin. After further questioning the Defendant told Officer Pigford that during the alleged robbery the Defendant had been able to gain possession of the gun which he placed inside the glove box of his Mercury Cougar parked near his residence. Officer Pigford then applied to the Justice of the Peace Court for a search warrant pursuant to which a loaded 9 mm pistol was recovered from the Mercury Cougar.

7.    The Government expects that Officer Pigford will testify that during this interview the Defendant was not in custody and that none of the officers present did or said anything to cause a reasonable person in the Defendant's position to believe that he was not free to leave. The Government also expects that Officer Pigford will testify that the Defendant was alert and coherent and able to respond intelligently to Officer Pigford's questions.

8.    At approximately 12:30 p.m. on August 14, 2007, Officer Pigford and ATF Special Agent Kusheba arrived at the hospital to re-interview the Defendant, who by this time had been moved to a hospital room. Officer Pigford advised the Defendant of his <u>Miranda</u> rights and the Defendant voluntarily agreed to waive those rights and answer questions. At first, the Defendant told the officers the same story that he had previously told Officer Pigford. After further questioning, the Defendant admitted that he made that story up and agreed to tell the truth. The Defendant then admitted, among other things, that he had been in possession of the firearm for several days and that he had accidentally shot himself in the foot.

9.    The Government expects that Officer Pigford will testify that during this interview the Defendant was not in custody and that none of the officers present did or said anything to

cause a reasonable person in the Defendant's position to believe that he was not free to leave. The Government also expects that Officer Pigford will testify that the Defendant was alert and coherent and indicated that he understood his <u>Miranda</u> rights and voluntarily agreed to waive those rights and answer questions. The Government also expects that Officer Pigford will testify that the Defendant was able to respond intelligently to Officer Pigford's questions.

10. The Government expects that Dr. Lisa Maercks will testify that she was the Defendant's treating physician when he was admitted to the hospital on August 14, 2007 up until approximately 7:00 a.m. when her shift ended. The Government expects that Dr. Maercks will testify that the Defendant appeared to be alert and coherent when she spoke to him and that he was able to intelligently answer her questions and provide relevant personal information necessary for his treatment. The Government expects that Dr. Maercks will testify that the Defendant told the hospital staff that he had been injured during an attempted robbery. The Government also expects that Dr. Maercks will testify that the Defendant's hospital records show that the Defendant was given morphine for pain but that the dosages given to Defendant – 4 mg at 5:55 a.m., 4 mg at 7:50 a.m., and 2 mg at 9:50 a.m. – are on the low end of morphine dosages typically given to patients. Dr. Maercks will testify that while many patients respond differently to morphine the Defendant appeared to be alert and oriented despite receiving the medication based on her observations and the Defendant's medical records.

11. The Government also expects that Dr. Maercks will testify that Defendant's medical records show that he was given a 15 on the Glasgow Coma Scale by the hospital staff, the highest possible score, at 5:45 a.m., 6:00 a.m., 7:00 a.m., 7:40 a.m., and 11:00 a.m. on August 14, 2007. Dr. Maercks will testify that this score indicates, among other things, that

Defendant was observed as being oriented and not confused. Dr. Maercks will also testify that Defendant's medical records show that at 12:30 p.m. on August 14, 2007, the Defendant was described by the hospital staff as being "Alert, oriented to person, place, time, situation, speech clear." Dr. Maercks will also testify that another record shows that at 12:30 p.m. on August 14, 2007, the Defendant was described by the hospital staff as being "alert, awake and oriented."

## ARGUMENT

### A. Miranda Does Not Apply Because The Defendant Was Not In Custody When He Made The Challenged Statements.

12. An officer's obligation to administer Miranda warnings attaches "only where there has been such a restriction on a person's freedom as to render him 'in custody.'" Oregon v. Mathiason, 429 U.S. 492, 495 (1977) (per curiam). In determining whether an individual was in custody, a court must examine all of the circumstances surrounding the interrogation, but "the ultimate inquiry is simply whether there [was] a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." California v. Beheler, 463 U.S. 1121, 1125 (1983) (per curiam). The custody determination is an objective test that asks would "a reasonable person have felt that he or she was not at liberty to terminate the interrogation and leave." Yarborough v. Alvarado, 541 U.S. 652, 663 (2004) (quotations omitted).

13. The Court of Appeals for the Third Circuit has recognized a number of factors relevant to the "in custody" inquiry: "(1) whether the officers told the suspect he was under arrest or free to leave; (2) the location or physical surroundings of the interrogation; (3) the length of the interrogation; (4) whether the officers used coercive tactics such as hostile tones of voice, the display of weapons, or physical restraint of the suspect's movement; and (5) whether the suspect

voluntarily submitted to questioning." United States v. Willaman, 437 F.3d 354, 359-60 (3d Cir. 2006). Another relevant factor is "whether the officer revealed his or her belief that the suspect was guilty." United States v. Jacobs, 431 F.3d 99, 105 (3d Cir. 2005).

14. The Government expects that the evidence will show that the Defendant was not in custody during any of his three challenged statements at the hospital. None of the officers told the Defendant that he was under arrest. The fact that the Defendant gave his statements at the hospital where he voluntarily went is another important factor indicating that he was not in custody. See, e.g., United States v. Overington, No. 07-147, 2007 WL 3119843, at *4 (E.D. Pa. Oct. 24, 2007) (holding that the defendant was not in custody while being questioned by the police in his hospital room because "Defendant voluntarily entered the hospital as the victim of a possible crime, and any restraint on his freedom of movement was for medical rather than investigative purposes"); United States v. Martin, 781 F.2d 671, 673 (9th Cir. 1985) (holding that the defendant was not in custody in the hospital because there were "no facts to indicate law enforcement officials were in any way involved in [the defendant's] hospitalization or did anything to extend [the defendant's] hospital stay and treatment").

15. The Government also expects that evidence will show that the length of each interview was not excessive. The Government expects that the officers will testify that they did not use hostile tones of voice, unholster their weapons, or physically restrain the Defendant's movement in any way. Finally, the Government expects the officers to testify that the Defendant voluntarily agreed to participate in each interview at the hospital. Based on the totality of the circumstances, a reasonable person in Defendant's position would not have felt that they were under arrest.

16.     Moreover, prior to the Defendant's third statement to Officer Pigford and Special Agent Kusheba, the Defendant was advised of his Miranda rights and agreed to waive those rights and answer Officer Pigford's questions.  As explained below, the Government expects the evidence will show that the Defendant knowingly, voluntarily, and intelligently waived his rights and made the challenged statements.  See, e.g., Colorado v. Connelly, 479 U.S. 157, 169-70 (1986) (holding that the same Fourteenth Amendment voluntariness test also applies to determine whether a defendant voluntarily waived his Miranda rights).  Accordingly, the third set of challenged statements should not be suppressed by reason of Miranda.

> B.  **The Defendant's Statements Should Be Admitted Because They Were Voluntary.**

17.     "A statement is given voluntarily if, when viewed in the totality of the circumstances, it is the product of an essentially free and unconstrained choice by its maker." Jacobs, 431 F.3d at 108.  "A necessary predicate to a finding of involuntariness is coercive police activity.  Further, there must be some causal connection between the police conduct and the confession." Id. (citation omitted).  "A suspect's background and experience, including prior dealings with the criminal justice system, should be taken into account in the voluntariness inquiry." Id.  "If an individual's will is overborne or that person's capacity for self-determination is critically impaired, her or his statements are involuntary." Id.

18.     As explained above, the Government expects that the evidence will show that the officers did not engage in any coercive activity such as using hostile tones of voice, unholstering their weapons, or physically restraining the Defendant's movement in any way.  The Government also expects that the evidence will show that the Defendant has been arrested many times in the

past, which is yet another important factor indicating that the Defendant acted voluntarily when he agreed to speak to the officers.

19.     The Government expects that evidence will not support the Defendant's contention that he was so "heavily sedated with morphine and other drugs" that he could not make a voluntary statement or voluntarily waive his Miranda rights. (Def.'s Mot. at 4.) As explained above, the Government expects that all of the officers will testify that the Defendant was alert and coherent and able to respond intelligently to their questions. In addition the Government expects that Dr. Maercks will testify that she observed the Defendant as alert and oriented that morning, and that Defendant's medical records show that other members of the hospital staff observed the Defendant as being alert, oriented, and not confused at or near the times when he made the challenged statements. Under similar circumstances, courts have routinely found that challenged statements were voluntary. See, e.g., United States v. George, 987 F.2d 1428, 1431 (9th Cir. 1993) (holding that statements made by a defendant recovering from a drug overdose who was a "sick young man" were voluntary because the defendant was "coherent [and] gave responsive answers to [the officer's] questions"); United States v. Cristobal, 293 F.3d 134, 141 (4th Cir. 2002) (holding that the defendant's waiver of his Miranda rights was knowing, voluntary, and intelligent even though the defendant had been given morphine because there was no evidence of "police overreaching," the defendant "never requested not to be interviewed due to pain," and the officers did not pressure the defendant in any way to waive his rights); Martin, 781 F.2d at 673-74 (holding challenged statement was voluntary even though the defendant was under the influence of pain medication because the defendant was "awake and relatively coherent," there was no evidence of "extended or oppressive questioning" or that the

defendant had received "excessive quantities or unusual combinations of drugs," the defendant's "injuries, while painful, did not render him unconscious or comatose," and the defendant said he wanted to talk to the officers); Pagan v. Keane, 984 F.2d 61, 63 (2d Cir. 1993) (holding that challenged statement was voluntary because "the content of petitioner's statements, which attempted to shift the blame for the shooting to an accomplice, suggests petitioner was well aware of the nature of the police questioning" and petitioner's medical records described him as "awake, alert, and oriented"); Overington, 2007 WL 3119843, at *2 & *5 (holding that challenged statements were volutary even though the defendant had received 6 mg of morphine prior to the interview and even though the defendant was wounded and complaining of pain because there was no evidence of police coercion and the defendant could respond "coherently to questions" and scored a 15 on the Glasgow Coma Scale).

19.    For all of the above reasons, the Government respectfully submits that the Defendant's Motion to Suppress Physical Evidence and Statements should be denied. A proposed order is filed herewith.

        Respectfully submitted,

        COLM F. CONNOLY
        United States Attorney

        /s/ Seth M. Beausang
        Seth M. Beausang (DE I.D. No. 4071)
        Assistant United States Attorney
        1007 N. Orange Street, Suite 700
        P.O. Box 2046
        Wilmington, Delaware 19899-2046
        (302) 573-6277, ext. 149
        (302) 573-6220 (fax)

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Criminal Action No. 07-116-JJF |
| Plaintiff, : | |
| v. : | |
| : | |
| TYREKE SPENCER, : | |
| : | |
| Defendant. : | |

**ORDER**

AND NOW, this ___ day of _____, 2007, after consideration of Defendant's Motion to Suppress Physical Evidence and Statements, and all evidence and filings offered in support thereof and opposition thereto, IT IS ORDERED that Defendant's Motion is DENIED.

IT IS SO ORDERED.

_____
THE HONORABLE JOSEPH J. FARNAN, JR.
UNITED STATES DISTRICT JUDGE